# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY | § § § § § § § | |
| | | Civil Action No. 4:18-CV-00330 |
| v. | | Judge Mazzant |
| AMERISURE INSURANCE COMPANY | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Amerisure Mutual Insurance Company's ("Amerisure") Motion for Summary Judgment (Dkt. #22) and Plaintiff Employers Mutual Casualty Company's ("Employers") Motion for Summary Judgment (Dkt. #24). Having considered the motions and relevant pleadings, the Court finds that Amersiure's Motion for Summary Judgment should be granted (Dkt. #22) and Employer's Motion for Summary Judgment should be denied (Dkt. #24).

## BACKGROUND

This is an insurance coverage dispute arising from an underlying personal-injury case in which the parties ask the Court to consider four agreements. The first two agreements concern the relationship between a contractor and subcontractor. As part of the construction of a church, Mycon General Contractors, Inc. ("Mycon") hired Hatfield Acousticals & Drywall, Inc. ("Hatfield") as a subcontractor. Mycon and Hatfield entered into two agreements—a Subcontract Agreement and Work Order—in which Hatfield agreed to (1) defend and indemnify Mycon against certain claims and (2) procure liability insurance that named Mycon as an "additional insured." The third and fourth agreements are Mycon and Hatfield's commercial general liability insurance policies under which Employers insured Mycon and Amerisure

insured Hatfield.  Pursuant to the Subcontract and Work Order agreements, Hatfield named Mycon as an additional insured in the Amerisure policy.



Hatfield employed a drywall mechanic named Vicente Chavez during the construction project.  Mr. Chavez allegedly sustained injuries during the construction project when a steel beam broke and struck Mr. Chavez in the head.  Consequently, Mr. Chavez sued Mycon and Lloyd Plyler Construction, L.P. ("Plyler")—a third party to this case—in the 401st Judicial District Court of Collin County, Texas asserting claims of negligence and gross negligence (the "Underlying Suit").

Here, Employers and Amerisure dispute who must assume Mycon's defense in the Underlying Suit (*See* Dkt. #1).  On February 8, 2019, Employers and Amerisure filed dueling motions for summary judgment (Dkt. #22; Dkt. #24).  On February 22, 2019, Employers filed a response to Amerisure's motion for summary judgment (Dkt. #25).  On March 1, 2019, Amerisure filed a response to Employers' motion for summary judgment (Dkt. #26).  On March 8, 2019, Employers filed a reply in support of its motion (Dkt. #27).  Amerisure did not filed a reply in support of its motion.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda

will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

To pinpoint the parties' disagreement, the Court first summarizes the parties' motions. Amerisure bases its arguments on Mycon's status as an additional insured (Dkt. #22). Hatfield's policy with Amerisure contains a Texas Contractor's Blanket Additional Insured Endorsement that enabled Hatfield to add additional insured parties to its policy after fulfilling certain conditions (Dkt. #22 ¶ 22). Through this provision, and pursuant to the Subcontract and Work Order agreements, Hatfield named Mycon as an additional insured party on its policy (Dkt. #22 ¶ 1). Amerisure does not contest that Mycon is an additional insured on the policy and, therefore, Amerisure agrees that it possesses a duty to defend Mycon as an additional insured under the policy (Dkt. #22 ¶ 33).

However, Amerisure notes that its duty to defend Mycon as an additional insured is limited. Examining the policy, Subcontract, and Work Order, Amerisure contends that the coverage available to Mycon as an additional insured is not primary or noncontributory, but purely excess to any other primary coverage (Dkt. #22 ¶¶ 34–37).[1] As Mycon's coverage is not

---

1. Primary insurance is "[i]nsurance that attaches immediately on the happening of a loss; insurance that is not contingent on the exhaustion of an underlying policy." *Primary Insurance*, Black's Law Dictionary (11th ed. 2019). "Noncontributory" coverage prohibits the insurer from seeking contribution from other coverage available to the insured (*See* Dkt. #22-2 at p. 18; Dkt. #22-8 at p. 9). Excess insurance is "[a]n agreement to indemnify against any loss that exceeds the amount of coverage under another policy." *Excess Insurance*, Black's Law Dictionary (11th ed. 2019).

primary or noncontributory, Amerisure turns to the "other insurance" provisions of the insurance policies.

Both Amerisure and Employer's policies contain "other insurance" provisions.[2] Pursuant to *Hardware Dealers* and *Royal Insurance*, Amerisure maintains that the other insurance provisions found in the policies are mutually repugnant (Dkt. #22 ¶¶ 38–49) (citing *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 586 (Tex. 1969); *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639 (5th Cir. 2004)). As the other insurance provisions are mutually repugnant, Amerisure suggests the Court must disregard the other insurance provisions and apportion the cost of Mycon's defense on a pro rata basis (Dkt. #22 ¶¶ 38–49). In other words, Amerisure believes that Amerisure and Employers must each fund one-half of Mycon's defense in the Underlying Suit (Dkt. #22 ¶ 49).

Employers agrees with much of Amerisure's argument, "Amerisure and [Employers] both agree that Mycon is owed a defense and that the 'other insurance' provisions of the [Employers] and Amerisure policies conflict." (Dkt. #25 at p. 1). However, pursuant to *American Indemnity*, Employers contends that much of Amerisure's argument is irrelevant (Dkt. #25 at pp. 1–3) (citing *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429 (5th Cir. 2003)). Employers focuses on the indemnity provision found in the Subcontract Agreement in which Hatfield agreed to defend and indemnify Mycon (Dkt. #24 at pp. 4–5). Employers argues that the indemnity provision is enforceable and the Underlying Suit triggered the indemnity provision (Dkt. #24 at pp. 9–13). Therefore, as the indemnity provision shifts

---

2. "Other Insurance" clauses restrict an insurer's liability by reason of the existence of other insurance coverage. *See Am. States Ins. Co. v. ACE Am. Ins. Co.*, 547 F. App'x. 550, 553 (5th Cir. 2013) (quoting *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 586 (Tex. 1969)). "Other insurance clauses function to vary, reduce, or eliminate the insurer's liability in the event of concurrent coverage." 44A Am. Jur. 2d *Insurance* § 175 (2019 Update).

exposure for the Underlying Suit to Hatfield, and Amerisure insures Hatfield, Employers argues that Amerisure bears the sole duty to defend Mycon in the Underlying Suit (Dkt. #24 at p. 13).

Reviewing the parties' arguments, the Court must first determine whether the Underlying Suit triggered the indemnity provision. If the Underlying Suit triggered the indemnity provision, the Court must then decide whether *American Indemnity* shifts exposure to Amerisure. If *American Indemnity* does not shift the exposure, then the Court must examine the "other insurance" provisions of the policies.

### I. Indemnity Provision

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 437 (2010) (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Under Texas law, "'If a written contract is worded in a manner that allows it to be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous.'" *Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, 882 F.3d 574, 578 (5th Cir. 2018) (quoting *EOG Res., Inc. v. Killam Oil Co., Ltd.*, 239 S.W.3d 293, 298 (Tex. App.—San Antonio 2007, pet. denied)). "A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citation omitted). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Skinner Custom Homes, Inc. v. Smith*, 397 S.W.3d 841, 845 (Tex. App.—El Paso 2013, pet. denied) (citing *Coker*, 650 S.W.2d at 393).

"The court's primary concern in construing a contract is to give effect to the written expression of the parties' intent." *Sundaram v. Nemeth*, CIV.A. 1:06-CV-712, 2008 WL 80017,

at *9 (E.D. Tex. Jan. 7, 2008) (citations omitted). To discern the parties' intent, courts "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (quoting *Coker*, 650 S.W.2d at 393). "When a court is called upon to interpret a contract, the court will give plain meaning to the words used in the writing." *Holmes v. Newman*, 01-16-00311-CV, 2017 WL 2871786, at *3 (Tex. App.—Houston [1st Dist.] July 6, 2017, no pet.) (citing *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518–19 (Tex. 1968)).

### A. Text of the Indemnity Provision

The indemnity provision found in the Subcontract Agreement between Mycon and Hatfield provides:

**ARTICLE IX**
**INDEMNIFICATION**

> 9.01 To the fullest extent permitted by law, the Subcontractor hereby undertakes and agrees to indemnify, defend and save and hold harmless the Contractor, the Owner, the Architect/Engineer and all of their officers, directors, shareholders, agents, employees, successors and assigns (collectively the "Indemnitees"), from and against any and all claims, suits, demands, liability or damages, including punitive damages, losses and expenses, including but not limited to, all expenses of litigation and arbitration, court costs, and attorney's fees arising out of or resulting from the performance, or failure in performance, of the Subcontractor's Work under this Subcontract, provided that any such claim, suit, damage, loss or expense is: (a) attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself), including the loss of use resulting therefrom, regardless of possession or ownership or (b) attributable to the failure to achieve specific Green Measures, including LEED certification, or defects in green products or materials, and is) caused in whole or in part by reason of the acts or omissions or presence of the person or property of

> Subcontractor or any of its agents, employees, representatives, subcontractors or suppliers or anyone directly or indirectly employed by him or anyone for whose acts he may be liable or responsible for **INCLUDING WITHOUT LIMITATIONS, INJURIES, DEATH, OR DAMAGES WHICH ARISE FROM OR IN CONNECTION WITH, OR ARE CAUSED BY, ANY ACT, ERROR, OMISSION, OR NEGLIGENCE OF THE INDEMNITEES; BUT EXCLUDING INJURIES, DEATH, OR DAMAGES CAUSED BY THE SOLE NEGLIGENCE OR WANTON AND WILLFUL MISCONDUCT OF CONTRACTOR.** Such obligations shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article.

(Dkt. #24-2 ¶ 9.01) (emphasis in original).

Amerisure does not challenge the enforceability of the indemnity provision (Dkt. #26 ¶¶ 26–32). Instead, as there is no allegation in the Underlying Suit concerning Hatfield's negligence, Amerisure contends that the Underlying Suit did not trigger the indemnity provision.

### B. The Underlying Suit

In his Original Petition, Mr. Chavez alleged the following facts (Dkt. #24-1 ¶¶ 8–18). Hatfield employed Mr. Chavez as a drywall mechanic during the construction of a church. During the construction project, Plaintiff and another Hatfield employee were working on the bottom floor of the church. Plyler employees were cutting a steel beam above Mr. Chavez. Before finishing the cut, a Mycon safety supervisor noticed that the Plyler employees were not properly tied off or secured. Accordingly, the Mycon safety supervisor ordered the Plyler employees to stop their work and retrieve the proper safety equipment. However, as the Plyler employees left to retrieve their safety equipment, neither the Plyler employees nor the Mycon safety supervisor secured the partially cut steel beam. The beam then broke off and "swung around," striking Mr. Chavez in the head causing several injuries. Mr. Chavez subsequently

sued Mycon and Plyler—not Hatfield—alleging claims of negligence and gross negligence against Mycon and Plyler.

### C. Triggering the Indemnity Provision

In the indemnity provision, Hatfield agreed to indemnify Mycon against "any and all claims" (1) "arising out of or resulting from the performance" of Hatfield's work; (2) "provided that any such claim . . . is attributable to bodily injury . . . ;" and (3) the bodily injury is "caused in whole or in part by reasons of the acts or omissions or presence of the person or property of the Subcontractor or any of its agents [or] employees . . . ."[3] Such claims "includ[e] without limitations, injuries, death, or damages which arise from or in connection with, or are caused by, any act, error, omission, or negligence of [Mycon] . . . ." To give full effect to all the provisions—so that none will be rendered meaningless—each of these factors must be met to trigger the indemnity provision. As the Court finds that the allegations of the Underlying Suit do not meet the first or third factors identified above, the Underlying Suit did not trigger the indemnity agreement.

#### i. Arising Out of or Resulting From

The first triggering factor of the indemnity provision provides that Hatfield will indemnify Mycon for claims "arising out of or resulting from the performance, or failure in performance, of [Hatfield's] Work under this Subcontract." In the Underlying Suit, Mr. Chavez alleges that the negligence arose from the Plyler and Mycon employees' failure to secure the steel beam. In other words, Mr. Chavez's claims arise out of or result from the performance, or failure in performance, of Plyler and Mycon's work, not Hatfield's work. Consequently, the Underlying Suit does not meet the first triggering factor of the indemnity provision.

---

3. Employers agrees that these three factors must be met to trigger the indemnity provision (Dkt. #27 at p. 5).

At least one court interpreting similar language has reached the same conclusion. In *Smith*, Dominik—an employee of subcontractor Tennessee Tile, Inc. ("TTI")—was electrocuted when he attempted to move a cable containing electrical wires during the course and scope of his employment. *Robert H. Smith, Inc. v. Tenn. Tile, Inc.*, 719 S.W.2d 385, 386 (Tex. App.—Houston [1st Dist.] 1986, no writ). Dominik then filed suit against the general contractor Robert H. Smith, Inc. ("Smith"). *Id.* In a subcontract agreement, TTI agreed to indemnify Smith:

> The Subcontractor [TTI] shall indemnify and hold harmless the Contractor [Smith] and all of his agents and employees from and against all claims, damages, losses and expenses, including attorney's fees *arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract*, provided that any such claim, damage, loss, or expense . . . .

*Id.* at 387 (emphasis in original).[4] Examining this language, the court reasoned:

> Having reviewed the language of this agreement, we are not convinced that the subcontractor is to indemnify the general contractor except against claims "arising out of or resulting from the performance of the subcontractor's work . . . ." These words of limitation show that the parties intended that the subcontractor be liable only for negligence that results from the work to be performed.

*Id.* at 388; *see also Glendale Const. Servs., Inc. v. Accurate Air Sys., Inc.*, 902 S.W.2d 536, 539 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (citing *Smith*, 719 S.W.2d at 385–88) (interpreting a similar indemnity provision); *McGee v. Ill. Cent. Gulf R. Co.,* CIV.A. 86-4764, 1987 WL 20113, at *2–3 (E.D. La. Nov. 17, 1987) (Finding indemnity provision stating "Contractor agrees to assume all risk . . . for death of or injury to any person . . . in any way attributable to the services to be performed by the Contractor . . . or to the acts or omissions or presence of the Contractor's officers, employees, or agents" required contractor to indemnify indemnitee for all injuries *attributable to services performed* by the contractor); *Greer v. Servs.,*

---

4. Although decided under the "clear and unequivocal" rule, the Court finds the interpretation of the indemnity provision in *Smith* persuasive.

*Equip. & Eng'g, Inc.*, 593 F. Supp. 1075, 1079 (E.D. Tex. 1984) (examining "arising from . . . in connection with language" and noting, "It is quite clear that just because an employee was at work or on a worksite when injured does not necessarily mean the injury arose out of or was incident to the performance of the employee's work.").[5] Like *Smith*, the words of limitation in the Mycon-Hatfield indemnity provision demonstrate that the parties intended for Hatfield to indemnify Mycon only for claims arising from or as a result of Hatfield's work.

    ii. **Caused in Whole or in Part by Reasons of the Acts or Omissions or Presence of the Person or Property of the Subcontractor or its Employees**

The third triggering factor of the indemnity provision provides that the injury must be "*caused in whole or in part* by reason of the acts or omissions or presence of the person or property of Subcontractor or . . . [its] employees . . . ." (emphasis added). In its interpretation of the indemnity provision, Employers contends that Mr. Chavez's mere presence on the construction site caused Mr. Chavez's injury, "Therefore, so long as the claim arises out of Hatfield's work on the project, is attributable to bodily injury, and caused in whole or in part by the presence of a Hatfield employee, Hatfield's indemnity obligation is triggered." (Dkt. #27 p. 5). Employers' argument misconstrues the causal relationship pled in the Underlying Suit.

While it is true that Mr. Chavez was physically present at the construction site when he was injured, it cannot be said that Mr. Chavez's presence *caused in whole or in part* his injury. Examining an insurance policy containing the language "caused, in whole or in part, by" the Fifth Circuit noted, "the Texas Supreme Court has defined 'caused by' as requiring proximate

---

5. The Texas Supreme Court has held that "arise out of" means there is simply a causal connection or relation, which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation. *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citations and quotations omitted); *see also Red Ball Motor Freight, Inc. v. Emps. Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951) ("'Arising out of' are words of much broader significance than 'caused by'. They are ordinarily understood to mean "originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from", or in short, 'incident to, or having connection with' . . . ."). The Court does not find a causal link between Hatfield's performance of its work and the alleged cause of Mr. Chavez's injuries. Mr. Chavez's claims simply do not originate from, have their origin in, or grow out of Hatfield's work.

causation." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 598 (5th Cir. 2011) (citing *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202–3 (Tex. 2004)). "Proximate cause is that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury and without which the injury would not have occurred." *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc.*, 393 S.W.3d 492, 507 n.13 (Tex. App.—Dallas 2013, pet. denied) (citations omitted).[6] The allegations of the Underlying Suit do not demonstrate that Mr. Chavez or Hatfield's presence formed part of the natural and continuous sequence that produced his injury. Instead, it was the alleged natural and continuous sequence of the Plyler and Mycon employees that produced Mr. Chavez's injuries.

Other courts examining indemnity provisions requiring the indemnitor to cause in whole or in part the claim for which indemnification is sought have reached similar conclusions. *See Moore v. Home Depot USA, Inc.*, 352 F. Supp. 3d 640, 649 (M.D. La. 2018) (interpreting "caused, in whole or in part, by" similarly); *Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.*, 263 S.W.3d 291, 297 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (interpreting similar indemnity provision under express negligence test). As a result, the Court finds that the third triggering factor of the indemnity provision is not met as Hatfield's presence at the construction project did not cause in whole or in part the injury claimed.

## II. Summary Judgment

As the Court finds the Underlying Suit did not trigger the indemnity provision found in the Subcontract Agreement, the Court need not address Employers' argument that *American*

---

6 *See also see also Windrum v. Kareh*, 17-0328, 2019 WL 321925, at *10 (Tex. Jan. 25, 2019), *reh'g dismissed* (May 24, 2019) (citations and quotation marks omitted) ("Proximate cause consists of (1) cause in fact, and (2) foreseeability. Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. This Court has long held that a defendant's act or omission need not be the sole cause of an injury, as long as it is a substantial factor in bringing about the injury."); *Proximate Cause*, Black's Law Dictionary (11th ed. 2019) ("1. A cause that is legally sufficient to result in liability; an act or omission that is considered in law to result in a consequence, so that liability can be imposed on the actor. 2. A cause that directly produces an event and without which the event would not have occurred.").

*Indemnity* controls this case (Dkt. #24 at pp. 8–9). Employers also moves for summary judgment on its breach of contract claim and request for attorney's fees. However, based on the preceding discussion, the Court does not find that Amerisure breached its policy by failing to assume Mycon's sole defense pursuant to the indemnity provision. As a result, the Court believes Employers' motion for summary judgment should also be denied as to these claims.

Employers admits in its response to Amerisure's motion for summary judgment that if *American Indemnity* does not control this case, then "[Employers] and Amerisure would both be obligated to furnish Mycon with a defense, splitting the costs on a pro rata basis." (Dkt. #25 at p. 1). In its motion for summary judgment, pursuant to the other insurance provisions of the insurance policies, Amerisure seeks to split the costs of Mycon's defense on a pro rata basis (Dkt. #22). Accordingly, Amerisure's motion for summary judgment should be granted.

## CONCLUSION

It is therefore **ORDERED** that Amerisure's Motion for Summary Judgment (Dkt. #22) is hereby **GRANTED** and Employers' Motion for Summary Judgment (Dkt. #24) is hereby **DENIED**. As the Court's ruling disposes of all claims alleged by Employers, the Court **ORDERS** the parties to submit an agreed, proposed final judgment by **Monday, August 12, 2019**.

**IT IS SO ORDERED.**
**SIGNED this 7th day of August, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE